

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

DEC 20  A 9 51

WILLIAM W. BLEVINS
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**19-14695**
**SECT.F MAG.5**

Jennifer Gray

6454 Airline Hwy Apt 7306

Baton Rouge, LA 70805

Plaintiff, Pro Se

v.

UNUM Group

8485 Goodwood Blvd.

Baton Rouge, LA 70806

Defendant

**CIVIL ACTION**

**COMPLAINT FOR VIOLATIONS OF.**

(1) **Title VII of the Civil Rights Act of 1964,**
(2) **Title I of the Americans with Disabilities Act of 1990**

**[JURY DEMAND]**

## INTRODUCTION

1.    This is an action for relief from employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq and Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq.

2.    Plaintiff, Jennifer Gray ("Plaintiff or Ms. Gray") proceeding Pro Se, alleges that Defendant UNUM Group (formerly known as AlwaysCare) management, executives, employees and all of whose name are known or

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

1

_X_ Fee $400.00
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

unknown (collectively, "Defendant"), unlawfully discriminated against her on the basis of her disability. Plaintiff also alleges that the Defendant retaliated against her for having complained about harassment, retaliation, and discrimination.

3.    From February 2018 through March 2019, Ms. Gray contends that the Defendant discriminated against her by not granting the same equal terms and conditions of employment as similar situated employees. The Defendant failed to allow Ms. Gray to telework as needed for disability related reasons but similar situated employees were allowed to telework as needed for non-disability reasons.

4.    Ms. Gray was instructed to seek an accommodation for the practice if it was needed for disability related reasons, however similar situated employees were allowed to telework as needed for non-disability reasons under no particular requirements.

5.    Plaintiff also claims that the Defendant discriminated by not neutrally applying the company's policies, practices, and decisions to similar situated employees in regards to telework, flexible scheduling, attendance, and the performance improvement/disciplinary policy. The decisions of the Defendant had a disparate impact on her based on her disability.

6.     Ms. Gray asserts that the Defendant retaliated against her for having complained about harassment, discrimination and retaliation. After Ms. Gray made several complaints against management, the Defendant revoked her longstanding reasonable accommodation for no legitimate reason and threatened to discipline her for it. The Defendant also rescinded her accommodation of flexing her scheduling for her disability although flexible scheduling was department practice.

7.     Other forms of adverse actions include, but not limited to, giving the plaintiff a written reprimand for undefined attendances issues, scrutinizing her time off request, failing to offer her training/trainer opportunities, excluding her from team engagements, forcing her to engage in a medical inquiry after having being accommodated for years, and falsely accusing her of violating other company policies.

8.     Plaintiff further asserts that the Defendant intentionally sought to humiliate her and her credibility because of her disability. Defendant deliberately denied having knowledge of her disability. Defendant was aware that Ms. Gray was embarrassed for having a mental impairment.

9.     Plaintiff was forced to hide her disability issues out of fear of being reprimanded for it. Plaintiff was constructively discharged because of the discrimination, adverse actions, and the revocation of her accommodation.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

## PARTIES

10.   Ms. Gray, a female with a Generalized Anxiety Disorder, was hired by AlwaysCare in August 2011 as a customer service representative but promoted to a dental claims' processor. Plaintiff worked as a dental claims' processor until she was constructively discharged in March 2019.

11.   In August 2016, UNUM Group purchased AlwaysCare which was a privately-owned insurance company based in Louisiana. UNUM Group, disability insurer, employs more than 9,000 individuals at various locations throughout the country. Defendant operates an office in Baton Rouge, LA and all or most of the events alleged herein occurred while Plaintiff was employed by Defendants in that office.

12.   At all times relevant herein, Defendant had at least fifteen employees and was therefore an "employer" within the meaning of Title VII.

13.   Defendant, UNUM Group, is liable for acts of their management, officials, and employees at each level of the company.

## JURISDICTION AND VENUE

14.   This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the Title VII and the ADA.

15.   Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391, as the location of UNUM Group, is in the Eastern District of Louisiana.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Venue is also proper in this District because the unlawful acts of employment discrimination described herein occurred within Louisiana.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.   Ms. Gray timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On September 26, 2019, Notice of Right to Sue.

17.   Ms. Gray also timely filed this action and have complied with all administrative prerequisites to bring this lawsuit.

## FACTUAL ALLEGATIONS

18.   During the seven tenure with the company, Ms. Gray consistently exceeded performance expectations and worked a high volume of hours. The Plaintiff was one of the top performers in the company. The Plaintiff's duties were to review and process dental claims.

19.   For years, Ms. Gray was praised for her work performance and contributions within the department including being the department trainer. The Plaintiff was highly respected amongst her peers. Prior to the complaints, Ms. Gray had no disciplinary fractions.

20.   Although the company converted to UNUM Group in August 2016, management maintained using the policies and practices of AlwaysCare. Julie

Hullinger (formerly Julie Estess) was the director of Ms. Gray under both umbrellas.

21.   Under AlwaysCare, management created flexible scheduling to combat unexpected absenteeism. Management did not have a protocol or policy for flexible scheduling. Employees were also allowed to fluctuate schedules. Each employee worked independent schedules and assignments. Employees were required to complete their hours weekly, which Ms. Gray maintained a high volume of hours for years. This practice was continued under the UNUM Group umbrella and through the plaintiff's last date of employment.

22.   Under the AlwaysCare, Ms. Gray disclosed her Generalized Anxiety Disorder to Ms. Hullinger.  These communications were verbally and through text message exchanges. Ms. Hullinger granted Ms. Gray permission to leave the office during times she had unexpected anxiety attacks with the promise of flexing her schedule to make up the missed time and/or assignments. No formal records were made because Ms. Gray needs were met under the flexible scheduling granted to all employees.

23.   From January 2014 to October 23, 2018, Ms. Gray used this accommodation as needed during times of anxiety issues. Plaintiff successfully fulfilled her obligations.

24.   Around 2016 (under AlwaysCare), employees were granted access to telework as needed to alleviate the problems with office absenteeism. This perk was granted to employees after working one year within the department. Physical presence in the office was not required to perform the duties. Plaintiff was also granted the telework option under AlwaysCare umbrella.

25.   Employees were also allowed to telework as needed under no particular requirements or reasons. Employees were allowed to telework as needed for unexpected child care issues, unexpected illnesses, unexpected weather issues, transportation issues, and/or any reason that prevented them from coming into the office.

26.   On February 1, 2018, Ms. Gray request to telework because she was struggling to concentrate due to her disability. Ms. Hullinger granted her permission to telework as needed for that instance.

27.   During the month of February 2018, the Plaintiff had verbal discussions and email communications with Ms. Hullinger regarding the telework as needed practice. Ms. Hullinger informed Ms. Gray that she was unable to allow her to telework as needed for disability related issues. Plaintiff was aware similarly situated employees were allowed to telework for non-disability related issues.

28.    In February 2018, Ms. Gray request for policy guidelines because of the inconsistences in reasons employees were allowed to telework. Ms. Hullinger informed the Plaintiff that she would follow up with her superior, Leston Welsh (former VP of Operations). Ms. Hullinger failed to provide a telework policy and did not speak with her superior regarding the matter.

29.    On March 16, 2018, Ms. Gray request use her accommodation. Ms. Hullinger granted her permission. Ms. Gray also request to telework as needed for the instance. At this time, Ms. Hullinger instructed Ms. Gray to speak with the UNUM Group's Health and Wellness Counselor, Mandy Stogner, to seek an accommodation to telework.

30.    Ms. Gray also documented her request for an accommodation to telework as needed during times of her disability issues via email. Again, Ms. Gray request information regarding the telework policy. Ms. Hullinger advised her that she would speak Mr. Welsh on the policy. Ms. Gray waited on the response but failed to her back from Ms. Hullinger.

31.    In April 2018, UNUM Group hired Helen Thomas to manage the daily operations as Claims' Manager under the direction of Ms. Hullinger. Ms. Hullinger instructed all employees to see Mrs. Thomas for further permissions.

32.    Between April 2018 and June 2018, Ms. Gray verbally discussed with Mrs. Thomas about her mental impairment. There were also conversations

via text messages. Ms. Gray informed Mrs. Thomas of her embarrassment of having a disability and fear of the stigma associated with mental health issues.

33.    Ms. Gray also advised Ms. Thomas that she struggled with her anxiety during moments she was overwhelmed and during confrontations. Mrs. Thomas also gave her permission to leave the office during times of having an anxiety attack with the promise to flex her schedule to make up missed time and/or assignment.

34.    Between April 2018 and October 23, 2018, the Defendant allowed the Plaintiff to use this accommodation as needed. Again, the Plaintiff successfully fulfilled her obligations.

35.    In June 2018, Mrs. Thomas asked Ms. Gray to be her trainer and mentor.  For months, Ms. Gray trained Mrs. Thomas on the department duties. Mrs. Thomas also reached out to Mrs. Gray outside of the office for guidance. Mrs. Thomas consistently praised the Plaintiff for her performance and her training skills.

36.    Between June 2018 and September 2018, Mrs. Thomas overwhelmed the Plaintiff with the need for assistance. The Plaintiff explained that long hours of working and assistance made her struggle with her disability.

37.    On September 12, 2018, Mrs. Thomas pulled Mrs. Gray in a meeting to discuss an upcoming training class. In this meeting, Ms. Gray began having

anxiety issues because Mrs. Thomas method of addressing the problem. Mrs. Thomas asked her to come to her vehicle to further discuss the matter. The conversation became confrontational and Mrs. Gray had a severe anxiety attack. Mrs. Thomas granted her permission to go home for the day. Ms. Gray did not report the incident because of fear of retaliation for complaining against the manager.

38.  Plaintiff was aware that a previous employee, Shelby Haynes, was terminated two weeks after making a complaint against the manager.

39.  On September 18, 2018, Mrs. Thomas apologized to Ms. Gray for the incident. At this time, Ms. Gray informed Mrs. Thomas that she no longer wanted to assist because she was overwhelming the Plaintiff which caused her to have anxiety issues. Ms. Gray asked for her to seek other guidance, however Mrs. Thomas continually went to her for assistance.

40.  On October 23, 2018, Ms. Gray request to use her accommodation of because anxiety issues from being overwhelmed with Mrs. Thomas. Mrs. Thomas granted the Plaintiff permission with no problem.

41.  On November 5, 2018, Mrs. Thomas went to Ms. Gray's desk to confront her about a rumored internal complaint. Ms. Thomas stood over Ms. Gray in an intimidating manner and accused her of making the complaint. Again, the confrontational method affected Ms. Gray's disability. Ms. Gray took

the appropriate steps to make a complaint against Mrs. Thomas for her offensive conduct.

42.    On this date, Ms. Gray directly informed Mrs. Thomas to stop the manner of how she addressed issues. Ms. Gray request for the presence of Human Resources for future communications. Ms. Gray request to no longer meet in private with her manager. Ms. Gray also informed the manager of no longer wanting to be her mentor. After this date, the Defendant started mistreating the Plaintiff.

43.    On November 7, 2018, the Defendant doubled the Plaintiff's assignment in area that were not her responsibility. Ms. Gray request for a meeting with management which included Ms. Hullinger and Mrs. Thomas. On this date, the Plaintiff disagreed with assignment and being held to a different standard than other employees.

44.    On November 8, 2018, the Defendant changed the nature of the Plaintiff's assignment again. Ms. Gray struggled with her anxiety because of the intentional acts. Plaintiff request to use her accommodation.  Mrs. Thomas initially approved but rescinded her permission. Mrs. Thomas instructed Ms. Gray to contact Ms. Stogner for the matter.

45.    Ms. Gray did not follow this order because it was no justified reason to speak with the Health and Wellness Consultant.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

46.    From November 12 through November 25, the Plaintiff was out of the office on vacation and a major injury to her child.

47.    On November 26, 2018, Ms. Gray returned to the office. Mrs. Thomas called the Plaintiff to an unexpected meeting. Mrs. Thomas pulled the Plaintiff in a meeting alone to question her about speaking to Ms. Stogner.

48.    Following the meeting, the manager gave the Plaintiff a written reprimand for undefined attendance issues. The Defendant gave the Plaintiff an occurrence according to UNUM's attendance policy for the date she used her accommodation. The Defendant also threatened to discipline the Plaintiff if she did not contact Ms. Stogner.

49.    The Plaintiff was aware of employees with severe attendance issues that were not disciplined whereas the Plaintiff maintained a 50-hour work week. She disagreed with the reprimand, but followed the Defendant's orders.

50.    On November 27, 2018, Ms. Gray reached out to Ms. Stogner. The UNUM Group official advised the Plaintiff to provide medical documentation in order to have job protection from violating UNUM's attendance policy.

51.    The Plaintiff complained about the actions again. During the conversation, Ms. Gray informed the UNUM Group official she felt the acts were retaliation.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

52.    Between November 28 and December 6, the Plaintiff questioned the Defendant of the dates of allege attendance issues and clarification on UNUM Group's disciplinary policies. The Plaintiff was aware that the Defendant did not document attendance issues with the employees the department. Management failed to provide the dates.

53.    On December 6, 2018, the Defendant officially revoked Ms. Gray's accommodation. In this email exchange, the Defendant reprimanded the Plaintiff for using an offensive tone in questioning their actions, denied being aware of the Plaintiff's anxiety disorder, and threaten to discipline her for leaving the office during times of having anxiety issues.

54.    Defendant also provided the Plaintiff with a copy of the company's performance improvement/disciplinary policy and attendance policy. This was first time of being made aware that UNUM Group had an attendance policy. The attendance policy contradicted the flexible scheduling practice.

55.    In the email exchange, the Defendant placed Ms. Gray on a structured schedule and informed her that she was no longer entitled to flexible scheduling for her disability unless she had it approved as accommodation. These stipulations were only placed on the Plaintiff while similar situated employees were allowed to engage in the fluctuating/flexible schedules.

56.    The Defendant warned the plaintiff that failure to uphold those standards would result in being placed on a PIP which could result in termination.

57.    Between December 8-10, 2018, Ms. Gray continued to follow company protocol by reporting the retaliatory acts. On December 10, 2018, Ms. Hullinger met with the Plaintiff at Community Coffee. Ms. Gray cried to the director about their treatment. Ms. Gray informed the director that she was going to report them to UNUM Group's Ethics Committee.

58.    Ms. Hullinger asked her not to contact the committee. The director informed Ms. Gray that she would speak with the company's Employee Relations Consultant, Courtney Edwards.

59.    The Plaintiff spoke with Ms. Edwards and reported the problems; however, the Defendant continued the adverse actions. The Defendant purposely restricted the Plaintiff's personal email from the company server to prevent her from reporting adherence, excluded her from team emails, and alienated her from team engagements. Ms. Gray suffered daily because of intentional actions and continued to report the incidents.

60.    On January 8, 2019, Mrs. Thomas was terminated from UNUM Group, however Ms. Hullinger continued as the director.

61.   On January 11, 2019, Danielle Dillard (current UNUM Group employee) brought to Ms. Gray's attention that she was not included in an upcoming trainer/training opportunity. Ms. Dillard provided the Plaintiff with a copy of the itinerary. The Plaintiff's name was not listed as a participant in the opportunity.

62.   Several other employees also informed the Plaintiff that they were selected in December 2018 to be a trainer for promotional purposes. The employees questioned the Plaintiff if she was leaving the company. The plaintiff was not made aware of the opportunity. This was embarrassing because the Plaintiff was known as the department trainer.

63.   On this date, Senior Executive, Catherine Lackey, inadvertently sent the Plaintiff an email of the training opportunity. Again, the Plaintiff was excluded from the opportunity for no reason.

64.   On January 16, 2019, the Plaintiff was summoned into an investigation probe by Ms. Edwards. During this interrogation, the Defendant falsely accused the Plaintiff of falsifying time, conflicts of interest and misconduct which were all violations subject to immediate termination. On each count, the Plaintiff denied committing any of the violations.

65.   On January 17, 2019, the results of the investigation ended with Defendant reprimanding the Plaintiff for misconduct.

66. Between January 25 through February 24, the Plaintiff took a leave of absence for a FMLA qualifying event with her child.

67. From February 25 through March 6, 2019, Ms. Gray continued to follow the stipulations placed by the Defendant while other employees were not subjected to the same guidelines. Ms. Hullinger still continued to engage with the Plaintiff which triggered her anxiety. Because of the scrutiny with her disability and revocation of her accommodation, the Plaintiff was forced to hide in the company bathroom during those instances.

68. On March 6, 2019, Ms. Gray was constructively discharged from the company. The Plaintiff chose to endure the two weeks out of love for her peers. Ms. Gray last employment was March 20,2019.

## COUNT ONE

## Disability Discrimination in Violations of

## Title I of the Americans with Disabilities Act

## (Disparate Impact)

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 67, above.

70. According to Title I of the ADA, no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees,

employee compensation, job training, and other terms, conditions, and privileges of employment 42 U.S.C. § 12112(a)

71.    Also, Section 12112(b)(3) prohibits covered entities from using standards, criteria, or "methods of administration" that have the effect of discriminating on the basis of disability, or such practices that "perpetuate the discrimination of others who are subject to common administrative control. 42 U.S.C. §12112(b)(3).

72.    Ms. Gray was a qualified individual with a disability and performed the essential duties of her job with or without an accommodation. 42 U.S.C. § 12111(8).

73.    The Plaintiff had successfully performed the essential functions of her job for over seven years with or without an accommodation.

74.    The Defendant failed to allow Ms. Gray equal access to the telework, flexible scheduling, trainer opportunities, and other privileges as similar situated employees.

75.    The Defendant instructed Plaintiff to go through interactive process to participate in the department practices whereas similar situated employees were allowed the privileges for non-disability related reasons under no particular protocol.

76.    Plaintiff further allege that Defendants' policies, practices, and decisions had a disparate impact upon her based on her disability.

77.    The Defendants' conduct as alleged above constitutes discrimination of the Disability discrimination in violation of the ADA. The stated reasons for the Defendants' conduct were not truthful, but instead were pretext to cover the Defendants' discriminatory animus.

78.    As a direct result of the unlawful discriminatory employment practices engaged in by the Defendant in violation of Title VII, the Plaintiff suffered severe emotional distress, embarrassment, loss of self-esteem and humiliation.

79.    The Defendant's actions were malicious, intentional and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based her disability.

80.    Plaintiff realleges she was constructively discharged because of the adverse actions, discrimination, and revocation of her accommodation.

## COUNT TWO

### Retaliation in Violation of

### Title VII of the Civil Rights Act of 1964, *as amended*,

### 42 U.S.C. § 2000e-3(a)

81.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 79, above

82.    Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

83.    Plaintiffs made verbal and written complaints to Defendants' management, Human Resource officials, and employees opposing the Defendants' unlawful, discriminatory employment practices based on her disability.

84.    As a result of Ms. Gray complaints, the Defendant took materially adverse actions against the Plaintiff, including, but not limited to, revocation of her accommodation, disciplinary threats, threats of termination, exclusion from team engagements, reprimands by management, and exclusion from training/trainer opportunities.

85.    Also, the prohibition against discrimination [on the basis of disability] shall include medical examinations and inquiries. 42 U.S.C. §12112(d)(1). Once an individual is employed, a covered entity can require a medical exam and inquire about the existence or severity of a disability only if

the exam or inquiry is demonstrated to be job-related and consistent with business necessity. (42 U.S.C. 12112 (d)(4)(A)).

86.    The Defendant deliberately denied having knowledge of the Plaintiff's mental impairment. The Defendant was fully aware of the Plaintiff's disability. The Defendant failed for provide a job-related reason for the medical inquiry.

87.    The Defendant failed to provide a legitimate reason for the Plaintiff to provide medical certification for an existing accommodation and department practice.

88.    Plaintiff accommodation was effective and did not create any undue hardship. Defendant failed to provide a job-related reason why they revoked the Plaintiff's accommodation.

89.    The Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

90.    The Defendants' conduct as alleged above constitutes retaliation against Ms. Gray because she engaged in activities protected by the ADA and Title VII. The stated reasons for the Defendants' conduct were not truthful, but instead were pretext to cover the Defendants' retaliatory animus.

91.   As a direct result of the unlawful retaliatory employment practices engaged in by the Defendant in violation of Title VII, the Plaintiff suffered severe emotional distress, embarrassment, loss of self-esteem and humiliation.

92.   The Defendant's actions were malicious, intentional and done with reckless disregard to Plaintiffs' right to be free from retaliation for engaging in a protected activity.

93.   Plaintiff realleges she was constructively discharged because of the adverse actions, discrimination, and revocation of her accommodation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

(a) A declaratory judgement that the practices complained of herein are unlawful and in violation of Title VII and the ADA.

(b) Defendant to sign a decree to provide a training course to employees of their employment's rights.

(c) Back pay, lost wages, and lost benefits including 401k.

(d) Defendant pay compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life.

(e) Punitive damages for the malicious acts to deter the Defendant from engaging in future unlawful practices.

## **DEMAND FOR JURY TRIAL**

Ms. Gray demands a trial by jury of all issues so triable in this action.

Jennifer Gray
6454 Airline Hwy Apt. 7306
Baton Rouge, LA 70805

/s/Jennifer Gray

COMPLAINT FOR EMPLOYMENT DISCRIMINATION
22



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New Orleans Field Office**

500 Poydras St., Room 809
New Orleans, LA 70130
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
New Orleans Status Line: (866) 408-8075
New Orleans Direct Dial: (504) 595-2826
TTY (504) 595-2958
FAX (504) 595-2884
Website: www.eeoc.gov

Jennifer Gray
6454 Airline Hwy Apt 7306
Baton Rouge, LA 70805

Re:     Charge Number: 461-2019-01110
        Gray v. UNUM GROUP

Dear Ms. Gray:

The EEOC has carefully assessed and reviewed your charge of discrimination and determined that it should be closed. This decision is made considering all aspects of your case including the EEOC's limited resources which make it impossible to pursue all possible leads in every investigation. Our determination not to continue the investigation does not mean that your charge has no merit or that the conduct of the employer is lawful. It simply means that based on the evidence we have reviewed or uncovered at this time we are unable to determine whether or not a violation of the law has occurred.

The procedures of the EEOC require that we inform you promptly of this determination and provide you with a Notice of Right to Sue. This enables you to pursue your claim privately in court. Please carefully read the enclosed information regarding your private suit rights.

This concludes our investigation of your charge. If you feel you have a case against your employer, it is your responsibility to file your case in court. If a private lawsuit is not filed within 90 days of receipt of your final dismissal notice, the right-to-sue for the charge will be lost and cannot be restored by the EEOC.

Under the law you are protected from retaliation for having filed a charge or because you participated in any way in the investigation of a charge of employment discrimination. In the event you need further assistance from the EEOC, please contact us at 1-800-669-4000. Additional information about the EEOC is available at www.eeoc.gov.

SEP 2 6 2019

Sincerely,

Jennifer J. Mitchem

Digitally signed by Jennifer J. Mitchem
DN: cn=Jennifer J. Mitchem, o=Equal Employment
Opportunity Commission, ou=Enforcement,
email=jennifer.mitchem@eeoc.gov, c=US
Date: 2019.09.27 09:50:02 -05'00'

_____          _____
Date                             EEOC Representative

EEOC Form 161 (11/16)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jennifer Gray<br>6454 Airline Hwy Apt 7306<br>Baton Rouge, LA 70805 | From: | New Orleans Field Office<br>Hale Boggs Federal Building<br>500 Poydras Street, Room 809<br>New Orleans, LA 70130 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 461-2019-01110 | Jennifer Mitchem,<br>Investigator | (504) 595-2864 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u>** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Keith T. Hill,
Director

SEP 2 6 2019
*(Date Mailed)*

Enclosures(s)

cc:    **Angela Ripper<br>AVP, Legal Counsel Manager<br>UNUM GROUP<br>1 Fountain Square<br>Chattanooga, TN 37402**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.  For more information, consult the amended regulations and appendix, as well as*

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* to you (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of
your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the
charge. Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than** <u>2 years (3 years)</u> **before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, please make your review request within 6 months of this Notice. (Before filing suit, any request should be

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 461-2019-01110 |

Louisiana Commission On Human Rights
*State or local Agency, if any* and EEOC

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Jennifer Gray | (225) 253-7004 | 1984 |

| Street Address | City, State and ZIP Code |
|---|---|
| 6454 Airline Hwy Apt 7306, BATON ROUGE, LA 70805 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| UNUM GROUP | 15 - 100 | (225) 400-9100 |

| Street Address | City, State and ZIP Code |
|---|---|
| 8485 Goodwood Blvd, BATON ROUGE, LA 70806 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 07-01-2018   Latest: 03-20-2019

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with UNUM Group, formerly, AlwaysCare, on August 11, 2011, most recently as a Claims Analyst earning $16.64 per hour. In July 2018 and in September 2018, Julie Hullinger, Director of Claims and Customer Service, and Helen Thomas, Claims Manager, accommodated my request to flex my scheduled due to my disability. In November 2018, I was informed by Ms. Hullinger and Ms. Thomas that I was no longer allowed to flex my schedule, telework, or have any absences unless it was prior approved. I was told I needed to seek an accommodation or would be subjected to formal performance management for violating the attendance policy, but my coworkers were allowed to leave on short notice for many reasons without facing consequences. Teleworking and flexing schedules as needed, was department practice that everyone could participate in with no specific requirements, but my requests were being denied. I requested an accommodation throughout 2018 but was informed I needed to provide medical certification to be approved to leave work on a short notice, flex my schedule or telework. On November 5, 2018, I made a request to have Human Resources present for any communication I had to have with Ms. Thomas because it effected my disability. On November 7, 2018, I received an unfair assignment, double the volume, in an area that was not my designated responsibility from Ms. Thomas. I expressed to Ms. Thomas and Ms. Hullinger that I am being held to a different standard than other employees. On November 27, 2018, I informed Mandy Stogner, Health and Wellbeing Consultant, that I felt I was being retaliated against. On December 6, 2018, Ms. Thomas and Ms. Hullinger informed me that flexing my schedule or working from

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Jennifer Gray on 07-01-2019 11:51 AM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA <br> ☒ EEOC | 461-2019-01110 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

home would only be approved as a disability related accommodation, early departures, tardiness, and full day absences without legal protection was a violation of the attendance policy, but my coworkers were not held to the same standards. I was constructively discharged on March 20, 2019. The company employs over 15 persons.

No reason was given for the action taken against me.

I believe I have been discriminated against because of my disability and retaliated against in violation of the Americans with Disabilities Act; as amended, in that, my right to participate in the flexible scheduling and teleworking was rescinded unless I had a disability related accommodation but, my coworkers could flex their schedule and telework without cause

| | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. <br> SIGNATURE OF COMPLAINANT |
| **Digitally signed by Jennifer Gray on 07-01-2019 11:51 AM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |