UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JENNIFER GRAY                                    CIVIL ACTION

v.                                               NO. 19-14695

UNUM GROUP                                       SECTION "F"

ORDER AND REASONS

Before the Court is UNUM Group's motion to dismiss Jennifer Gray's *pro se* complaint. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**Background**

This employment-discrimination case arises from a customer-service representative's claims that her former employer, a disability insurance company, discriminated against her based on her generalized anxiety disorder and retaliated against her for complaining to management. The company contends the representative's claims should be dismissed on the pleadings for failure to exhaust available administrative remedies under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. The well-pleaded allegations of the representative's *pro se* complaint, taken as true and liberally construed in her favor, follow. See

1

Carlucci v. Chapa, 884 F.3d 534, 538 (5th Cir. 2018) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Jennifer Gray worked for UNUM Group, a disability insurer, for nearly eight years as a customer-service representative. She has generalized anxiety disorder, which causes her to suffer "unexpected anxiety attacks." But her disability did not stop her from becoming one of the company's top performers: She "consistently exceeded performance expectations and worked a high volume of hours."

One reason for Gray's high performance was UNUM's flexible scheduling policy. That policy allowed all employees——disabled or not——to design their own schedules, as long as they worked the required hours for the week. Teleworking, too, was permitted.

That changed in February 2018. For the first time, Gray's supervisor, Julie Hullinger, declined Gray's request to telework. Hullinger's response confused Gray, because UNUM continued to allow teleworking for similarly situated non-disabled employees. So, Gray pressed Hullinger to disclose UNUM's telework policy. She refused. Instead, she directed Gray's accommodation requests to one of UNUM's new claims managers, Helen Thomas.

After Thomas took charge, in April 2018, Gray disclosed her generalized anxiety disorder and received permission to leave the office during anxiety attacks and to "flex" her schedule. For the

next six months, Thomas routinely granted Gray's accommodation requests.

But the relationship soon soured. In November 2018, Thomas confronted Gray about a complaint she suspected Gray had filed against her, and Thomas "stood over" Gray "in an intimidating manner." After the incident, Gray filed a complaint against Thomas for "offensive conduct."

Thomas retaliated. She began by "doubl[ing]" Gray's "assignment[s]" in areas outside Gray's responsibility. She next formally reprimanded Gray for "undefined attendance issues." And she finally "revoked" Gray's accommodation, advising Gray that she could not enjoy flexible scheduling unless management approved a disability accommodation. Meanwhile, similarly situated non-disabled employees continued to enjoy flexible scheduling.

Thomas was not the only one to retaliate against Gray. An unnamed UNUM employee "purposely restricted" Gray's email to "alienate" her from team engagements, including training opportunities. And one of UNUM's employee-relations consultants, Courtney Edwards, initiated an investigation of Gray, accusing her of "falsifying time" and having "conflicts of interest." Gray denied the accusations but was nonetheless reprimanded in January 2019.

Gray took a month-long leave of absence and returned to UNUM in late February 2019. She did not last long. Because UNUM had revoked her accommodation, Gray would "hide in the bathroom" during anxiety attacks that occurred at work. To make matters worse, the way Hullinger "continued to engage with" her "triggered her anxiety." She quit in late March 2019, less than a month after returning to work.

About three months later, Gray filed a charge of discrimination against UNUM with the Equal Employment Opportunity Commission (EEOC). On the charge form, she placed check marks in boxes indicating that she claimed retaliation and discrimination based on disability; unchecked were the boxes for discrimination based on race, color, sex, religion, or national origin.

Gray received a right-to-sue letter from the EEOC in September 2019 and brought this *pro se* disability-discrimination action in December 2019. Her two-count complaint is opaque. For example, her factual allegations focus on disparate treatment, but she labels count one "disparate impact." And she labels count two "Title VII retaliation," although she makes no factual allegation of discrimination on the basis of any characteristic protected by Title VII.

Now, UNUM moves to dismiss Gray's *pro se* complaint under Rule 12(b)(6), contending that her claims are unexhausted and poorly pleaded.

I.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint that fails this requirement. See FED. R. CIV. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." Thompson v. City of Waco, Tex., 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and so are not accepted as true. See Thompson, 764 F.3d at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

5

The Court holds "*pro se* plaintiffs to a more lenient standard than lawyers when analyzing complaints, but *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." Chhim v. Univ. of Tex. at Austin, 836 F.3d 467, 469 (5th Cir. 2016) (citing Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002)).

## II.

UNUM moves to dismiss counts one and two as unexhausted and poorly pleaded. In so doing, UNUM relies on the labels Gray gives her claims: "disparate impact" and "Title VII retaliation." Both labels are wrong.

## A.

Consider the first label——disparate impact. The Supreme Court has "consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact." Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003). Disparate treatment occurs when an employer "'treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic.'" Id. at 52. (quoting Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). By contrast, disparate impact "involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more

harshly on one group than another and cannot be justified by business necessity." <u>Teamsters</u>, 431 U.S. at 335-36 n.15.

Although Gray labels count one "disparate impact," a review of her factual allegations reveals that she means to state a disparate-treatment claim. She alleges in her *pro se* complaint that UNUM denied her training opportunities offered to non-disabled employees and prohibited her from teleworking and "flexing" her schedule because of her generalized anxiety disorder. These are textbook disparate-treatment allegations, despite the label Gray gives them.

Substance—not a label—controls. Indeed, the Fifth Circuit has "frequently instructed district court[s] to determine the true nature of a pleading by its substance, not its label." <u>Armstrong v. Capshaw, Goss & Bowers, LLP</u>, 404 F.3d 933, 936 (5th Cir. 2005); <u>see also</u> <u>Edwards v. City of Houston</u>, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("We have oft stated that the relief sought . . . should be determined by substance, not a label."). And here, the substance of Gray's factual allegations show that the "true nature" of count one is a claim for disparate-treatment discrimination under the ADA. <u>Armstrong</u>, 404 F.3d at 936. The Court therefore construes count one of Gray's *pro se* complaint as an attempt to state such a claim.

Besides, any disparate-impact claim would fail on exhaustion grounds. An ADA plaintiff must exhaust administrative remedies before suing in federal court. Patton v. Jacobs Eng'g Grp., Inc., 874 F.3d 437, 443 (5th Cir. 2017). In deciding if an ADA plaintiff has exhausted a claim, the Court liberally construes the scope of the EEOC charge. Id. (citing Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006)). Liberal construction means that the Court views an EEOC charge "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation [that] can reasonably be expected to grow out of the charge[.]" Patton, 874 F.3d at 443.

No disparate-impact investigation could reasonably be expected to grow out of Gray's EEOC complaint, which nowhere references a facially neutral employment practice that "fall[s] more harshly on" disabled UNUM employees and that "cannot be justified by business necessity." Teamsters, 431 U.S. at 335-36 n.15. Gray therefore failed to exhaust administrative remedies with respect to any ADA disparate-impact claim she may be asserting.

Accordingly, the Court grants UNUM's motion to dismiss as unexhausted any ADA disparate-impact claim Gray may be asserting. Because UNUM does not address the sufficiency of Gray's disparate-treatment allegations, however, the Court denies UNUM's motion

insofar as it seeks dismissal of Gray's ADA disparate-treatment claim.

B.

The second label, "Title VII retaliation," is equally incorrect. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, sex, religion, or national origin." 42 U.S.C. § 2000e-2. Gray makes no allegation that UNUM discriminated against her on the basis of any of these protected characteristics; she alleges only that UNUM discriminated against her on the basis of her disability, generalized anxiety disorder. Because disability status is not a characteristic protected by Title VII, see 42 U.S.C. § 2000e-2, and Gray fails to allege discrimination on the basis of any characteristic protected by Title VII, the Court concludes that the "true nature" of count two is a claim for retaliation under the ADA. Armstrong, 404 F.3d at 936. The Court therefore construes count two of Gray's *pro se* complaint as an attempt to state such a claim.

Regardless, any Title VII retaliation claim would fail on exhaustion grounds. Recall Gray's EEOC charge. She did not mark any of the boxes for discrimination on the basis of race, color, religion, or national origin; she marked only the boxes for "retaliation" and "disability," indicating that she claimed

9

disability discrimination alone. Nor did Gray mention any of the characteristics protected by Title VII in the space the EEOC charge allots for a description of the "particulars" of the alleged discrimination. So, Gray's EEOC charge could not "reasonably be expected" to generate an EEOC investigation into any Title VII violations, Patton, 874 F.3d at 443, and Gray failed to exhaust any Title VII claim she may be asserting.

Accordingly, the Court grants UNUM's motion to dismiss as unexhausted any Title VII claim Gray may be asserting. Because UNUM does not address whether Gray's allegations suffice to state an ADA retaliation claim, however, the Court denies the motion insofar as it seeks dismissal of Gray's ADA retaliation claim.

*   *   *

Gray is a non-lawyer proceeding *pro* se. She, understandably, mislabeled claims in her complaint. UNUM analyzed Gray's claims based on the labels she gave them. But labels do not control; substance does. Gray's factual allegations reveal the substance of her claims, and that substance shows that Gray intends to state two claims under the ADA: a claim for disparate treatment and a claim for retaliation. Because UNUM's motion does not address either claim, the Court declines to decide if Gray has stated claims for disparate treatment and retaliation under the ADA.

III.

Accordingly, IT IS ORDERED: that UNUM's motion to dismiss Jennifer Gray's *pro se* complaint is GRANTED IN PART as to any Title VII and ADA disparate-impact claims Gray may be asserting and DENIED IN PART as to any ADA disparate-treatment and retaliation claims Gray may be asserting. Any Title VII and ADA disparate-impact claims are DISMISSED without prejudice for failure to exhaust administrative remedies.


New Orleans, Louisiana, May 13, 2020


_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE